## REBECCA GETTYS *v.* JAMES GETTYS *et al.*

SISTER STATES. *Decree of divorce void. When.* Ordinarily the judgments and decrees of a sister State have full effect in this State, but in divorce cases either the husband or wife must be a *bona fide* resident of the State in which the proceedings are instituted, else a decree thus fraudulently obtained will be held null and void. Mere temporary residence will not confer jurisdiction.

### FROM KNOX.

Appeal from the Chancery Court at Knoxville. O. P. TEMPLE, Ch.

A. S. PROSSER and HOUK & GIBSON for complainant.

W. P. WASHBURN and LOGAN & LUCKEY for defendant.

DEADERICK, C. J., delivered the opinion of the court.

Rebecca and James Gettys were married in Pennsylvania in 1866. Previous to the marriage they entered into a contract in contemplation of marriage, she relinquishing all claim to his estate, real or personal, if she survived him, and he agreeing, in consideration thereof, to secure her an annuity of $300, after his death and during her life. They resided, from the time of their marriage, in the county of McMinn, Tennessee, where defendant James had property and carried on business, until, as she alleges, he proposed

she should remove to Knoxville and he would remain at Athens and visit her occasionally. In 1876 she filed a bill against him for divorce and alimony, on the ground of cruel treatment and abandonment. To this bill respondent James answered, denying her charges and alleging in a cross bill that his life was in danger from her, and asking a divorce from her. Both bills were dismissed, and James Gettys appealed, but did not prosecute his appeal in this court.

Mrs. Gettys filed another bill for divorce and alimony in the chancery court at Knoxville in January, 1878, alleging that she had obtained information that defendant James Gettys, in the fall of 1877, had gone to Utah Territory, taking his son with him as a witness, and there obtained, on the 8th of October, 1877, a decree of divorce, which is exhibited with her bill, and which she alleges shows inhuman conduct toward and treatment of her.

The decree purports to be rendered in the probate court of Salt Lake county, in the Territory of Utah, and it appears from the transcript, and an affidavit of complainant James Gettys, that proceedings were instituted in the Utah court August 25, 1877, and a final decree, declaring complainant had forfeited her rights under the marriage contract, for divorce rendered on the 8th of October next thereafter. It is alleged in Mrs. Gettys's bill that at the time the affidavit of defendant James bears date, "August 25, 1877," which purports to have been made and attested in Utah, the said James was at his home in Athens, McMinn county, and that he was absent in Utah but a few

weeks, went expressly to institute proceedings against his wife for divorce, and returned to his home when his object was accomplished, and that he was not a bona fide resident of Utah at the time said suit was. instituted, but had his domicil in Tennessee, where his business was carried on during his temporary absence. The defendant filed a demurrer to the bill, relying in various forms upon the validity of the proceedings of the said probate court of Utah, by which the relation of husband and wife had been dissolved between complainant and defendant, and insisting she had no legal claim upon him as his wife. The Chancellor overruled the demurrer and allowed defendant Gettys to appeal.

It is true that the judgments and decrees of a sister State are entitled, ordinarily, to have full effect in the other States, but in order that the courts of any State shall have jurisdiction in divorce cases, either the husband or wife must be a bona fide resident of the State in which the proceeding is instituted, and if one of the parties, merely for the purpose of obtaining a divorce, goes to another State, not intending to make it his home, such temporary residence does not confer jurisdiction of the marriage relation. Any other rule, as affording facilities for unscrupulous parties to cheat the courts of their domicil of its rightful jurisdiction over this important relation, would be most demoralizing in its consequences. Numerous recent cases have arisen, and have been most carefully and elaborately considered by distinguished jurists, of divorces thus fraudulently obtained, and has been held

that they are absolutely null and void.    23 Am. R.,
299; 27 Am. R., 145; 2 Am. R., 415; 12 Am. R.,
260; 19 Am. R., 132; Cooley Con. Lim., 400.

Since this cause has been pending in this court
James Gettys has died.    His death has been sug-
gested and admitted, and the cause has been revived.
The Chancellor refused to order the defendant James.
Gettys, upon motion by complainant, to pay into court
a reasonable allowance to complainant *pendente lite* for
the maintenance of the complainant and for counsel
fees.    If such an order had been proper, before a
reference, the complainant snbmitted to it, and no
other question arising under the demurrer than that
decided, and the incidental questions of *res adjudicata,*
and the insufficiency of the allegations to maintain the
claim to alimony, and the want of any new ground
of divorce since the dismissal of former bill, we affirm
the Chancellor's decree and remand the cause for fur-
ther proceedings.    Defendant Gettys's executors will
pay the costs of this court.