# HOLMAN v. HOLMAN.—244 S. W. (2d) 618.

Western Division, at Jackson.   March 5, 1951.

Petition for Certiorari denied by Supreme Court, June 16, 1951.

274

Hardison, Walton & Collins, J. Granville Farrar, and David Ballon, all of Memphis, for appellant.

Poston Cox, of Memphis, divorce proctor, for appellee.

SWEPSTON, J. This is an appeal by complainant, Mrs. Holman, from a decree dismissing her divorce bill for lack of jurisdiction.

The case was heard on oral testimony after personal service and a pro confesso against defendant. The bill of exceptions is narrative and in some respects meager.

The facts as best we can determine are as follows:

Complainant was domiciled from June 1949 in Tennessee before her marriage to defendant. Defendant was at all times herein domiciled in Missouri, but was in the Navy and stationed in San Diego, California, when they were married in Arizona October 9, 1949. Immediately after the marriage for four to six weeks they lived in San Diego. He was then transferred to another base in California where there were no accommodations for wives

or families. She returned to Memphis and has since remained, living with her mother. When the bill was filed she was 20 years of age.

Her bill does not so allege but she testified that defendant paid her transportation to Memphis and promised to send for her when quarters became available. Her bill is silent as to correspondence after her return but she testified that his letters became infrequent and finally ceased. The bill alleges and she testified that he contributed nothing to her support after she returned to Memphis, although he was receiving the Government allotment; that on or about May 1, 1950, she telephoned him long-distance in California to ascertain his intentions; that he then stated their marriage was a mistake; that he did not love her; would not live with and support her, and asked her to get a divorce.

She further testified as alleged that after his discharge from the Navy on June 30, 1950, defendant came to Memphis, visted her and reaffirmed his statements made over the telephone.

Her mother corroborated her in all respects except as to the alleged agreement that her return to Memphis was to be temporary, as to which she had no knowledge. A friend corroborated her as to the telephone conversation and that she had had to support herself since her return.

The Chancellor found that neither of the parties was a resident of Shelby County or of Tennessee; that complainant being a minor could not acquire a domicile separate from that of her husband. He dismissed the bill for lack of jurisdiction.

The three assignments of error raise the one question: Can a minor acquire a separate domicile from that of her husband for purposes of divorce?

The divorce proctor of Shelby County, Poston Cox, takes the position that, if it be conceded for the purpose of discussion that a minor may acquire a separate domicile for purposes of divorce, yet complainant's bill shows on its face that the cause of action occurred in California and that complainant has not been a resident here for two years, so that the bill was properly dismissed in any event.

Responding to the question raised by appellant's assignments of error, we think the question should be answered in the affirmative.

Under Code Section 8429 the bill may be filed in the proper name of complainant; it makes no distinction between adults and minors.

■ Minors may prosecute and defend divorce actions without the necessity of a next friend or a guardian ad litem. Tenn. Proc.—Higgins & Crownover, Sec. 2336; Schouler on Marriage, Divorce etc., 6th Ed., Vol. 2, Sec. 1514; Gibson's Suits in Chancery, Sec. 1093, note 13, on the principle that one who is old enough to marry is old enough to sue in her own name.

■ Ordinarily the domicile of the wife is that of her husband, but there are many exceptions to the general rule, one of which is that she may do so for purposes of divorce. The authorities are collected in Younger v. Gianotti, 176 Tenn. 139, 138 S. W. (2d) 448, 128 A. L. R. 1413.

See also, Tyborowski v. Tyborowski, 28 Tenn. App. 583, 192 S. W. (2d) 231.

■ The marriage of a minor child either with or without the consent of the parents fully emancipates such child from parental authority and from the duty of support and deprives the parent of the right to the child's earnings, even though the child may later be

divorced while still a minor. Going v. Going, 8 Tenn. App. 690.

■ We, therefore, conclude that complainant had the right to select her own domicile for the purpose of divorce even though yet a minor and that the Chancellor was in error in holding to the contrary.

The next question under the Proctor's contention is did the acts occur in California or in Tennessee.

■ Our statute 8428 requiring two years residence before the filing of the bill does not apply where the acts occurred within this state. Carter v. Carter, 113 Tenn. 509, 82 S. W. 309; Fitzpatrick v. Fitzpatrick, 131 Tenn. 54, 173 S. W. 444; McFerrin v. McFerrin, 28 Tenn. App. 552, 191 S. W. (2d) 946. It is immaterial where the parties resided at the time of the acts complained of, if the acts occurred in this state and the petitioner is a bona fide citizen here when the bill is filed, even short of the two years. See above authorities.

The question above presents the more specific query when defendant failed to support complainant after she returned to Tennessee and later, while he was still in California, informed her over long-distance telephone that he was abandoning her, were the acts of abandonment and non-support committed in the locale of the actor or in the locale of the other party against whom the acts were committed?

This question has long puzzled this member of the court whether the communication be by mail, telephone, or other means. The answer might rationally be made either way.

Without any intention of settling the ancient debate on the question whether there can exist sound if there be no ear to hear it, or scenery with no eye to see it,

we think the purpose of the two year statute gives the correct answer.

For we are not concerned with the conduct of defendant in vacuo or in the abstract, but with the concrete effect such conduct had on the complainant. He may have intended to abandon her when he sent her back to Tennessee, or he might have made charges publicly that would have amounted to cruel and inhuman treatment, but until she became aware of his acts they could have no adverse effect on her.

The effect of his acts could only be received where she was physically present at the time of learning of his conduct and intentions.

Moreover, it seems to be better public policy to so hold, because the opposite view often places upon the wronged party the burden of going to the locale of the wrongdoer to obtain relief short of two years.

The above cited cases demonstrate that the purpose of this statute is to prevent non-residents from using this State as a dumping ground for the marital troubles of other States. This policy will not be violated by holding that these acts occurred here where complainant was physically present and has since May 1, 1950 undoubtedly been a bona fide citizen.

We have treated the above question separately and independently of the fact that about two months after the long-distance call of May 1, defendant came into Tennessee to complainant's residence and reaffirmed his previous statements. It is admitted that they did not live together while he was here for a few days and the inference is fairly to be drawn that his purpose in coming was to afford an opportunity for personal service to be made on him.

On these facts it is contended that the abandonment and non-support occurred in Tennessee, even if up to that time the acts be treated as having occurred in California.

We do not agree with that view.

■■ Under our statute Code Sections 8426 and 8427, some of the grounds for divorce are *non-continuing* in the sense that once the fault has occurred the act is complete and the cause of action exists then and there without further repetition; for example, knowingly entering into a second marriage while the first is subsisting, or one act of adultery, or conviction of an infamous crime, or an attempt on the life of the other by poison or other malicious means, or pregnancy by another at the time of the marriage, or cruelty such as renders cohabitation unsafe and improper, or indignities to the person rendering the condition intolerable and forcing a withdrawal.

Other grounds are *continuing* in character in the sense that once the fault has arisen it continues to exist through mere passivity of the wrongdoer; for example, that one of the parties at the time of the marriage was and still is naturally impotent and incapable of procreation, or desertion for two years, or refusal of the wife without reasonable cause to remove with the husband to this state and an absence for two years, or habitual drunkenness contracted after marriage, or abandonment and non-support.

The non-continuing causes give no trouble; there can be no question that if they occur in a foreign jurisdiction, two years residence in this State is required before the wronged party may sue here.

As to the continuing causes it is plausible to argue that a sin of omission is as much a sin as one of com-

mission, that, if after the wronged party becomes domiciled in Tennessee the abandonment and non-support are continued by the party at fault while he is even temporarily sojourning here, the act could be said to have occurred here by continuation of the omission or dereliction.

We have been unable to find any specific authority as to abandonment and non-support, because this ground is apparently peculiar to Tennessee; statutes of other states use the word "abandonment" coupled with non-support but specify a definite period it must exist, so that those instances are virtually equivalent to our term "desertion" for two years.

In 27 C. J. S. 638, Divorce, Sec. 74(b) and notes 72-76 and Sec. 75, note 77 will be found some support for either view of desertion; that it occurs at the place of origin, or at the place where the party or parties are domiciled when the stated period of time has elapsed.

In line with those cases holding that the act of desertion is not complete until the required time of its continuance has elapsed, it is held that if the time has elapsed in the foreign state, the cause of action arose there, whereas, if the time had not elapsed before removal to the forum, the cause of action is deemed to have arisen in the forum to which the party or parties removed. Those cases are helpful but by no means harmonious or determinative, because of statutory differences.

We must therefore, adopt a solution that is consonant with the spirit and purpose of our statute. The determinative fact is not where the parties resided but where did the acts occur, that is, the cause of action.

It is obvious that abandonment and non-support under our statute is a complete cause of action after these two acts or omissions have existed for a reasonable length of

time. Under the facts of this case we have held that the acts occurred in Tennessee, when he declared his intentions over the long-distance telephone. We think that his subsequent statements when he was physically in Tennessee were immaterial because they neither added to nor changed in any way the continuation of an already existing ground of divorce in this State.

If on the other hand, both of them being non-residents of this State, she was physically present out of the state when she learned of the true state of affairs, the cause of action would be complete and should be deemed to have occurred outside this State and her or their coming into this State and his reiterating his intentions would not be an act occurring here but merely a passive continuation of the act which became complete outside the State; any other view would open up the courts of this State to litigants on the other continuing statutory grounds above referred to such as impotency, or habitual drunkenness, short of two years residence.

If, therefore, we are in error in holding that the acts occurred in this State on the occasion of the long-distance conversation, then under the above view the reiteration of his statements when they were both in Tennessee would not make it a new act occurring in Tennessee; such reiteration is wholly immaterial to the solution of the problem in any aspect.

▆▆▆ If it be said that the conclusion we have reached as to the place where the acts occurred opens the door to fraudulent conduct of suitors who may desire to use our courts when not entitled to do so short of two years residence, our response is that (1) no law can prevent perjury or fraud but can only provide for punishment for same, and (2) a bona fide suitor is not to be repelled and denied a reasonable construction of the statute

because some other suitor may establish jurisdiction by fraud and perjury.

Let the decree below be reversed and a decree be entered here for an absolute divorce and restoration of the maiden name of complainant and let her go hence with costs.

Anderson, P. J., and Baptist, J., concur.