IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2012

# JAMES ROBERT WILKEN v. MARY CHARLOTTE WILKEN

**An Appeal from the Chancery Court for Gibson County**
**No. 19882      George R. Ellis, Chancellor**

---

**No. W2012-00989-COA-R3-CV - Filed December 27, 2012**

---

This appeal involves jurisdiction over a divorce case. The parties lived in Maryland throughout their 19-year marriage. In 2007 or 2008, the husband left the marital home in Maryland. Several months later, he moved to Tennessee. About one year after he moved to Tennessee, the husband filed this complaint for divorce in the trial court below. The wife filed an answer and a counterclaim for divorce. The trial court conducted the first day of trial in the matter, and the case was continued. Before the trial resumed, the trial court *sua sponte* entered an order dismissing the case for lack of jurisdiction, *in personam* jurisdiction over the wife and apparently also lack of subject-matter jurisdiction over the case. The husband now appeals. We reverse the trial court's decision and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

James B. Webb and Brandon L. Newman, Trenton, Tennessee, for the Plaintiff/Appellant James Robert Wilken

Barbara Hobock, Humboldt, Tennessee, for the Defendant/Appellee Mary Charlotte Wilken (no appellate brief filed)

## OPINION

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant James Robert Wilken ("Husband") and Defendant/Appellee Mary Charlotte Wilken ("Wife") were married on May 15, 1993.[1] They lived in Maryland for approximately 19 years, until Husband moved out of the marital home in June 2008. He never returned to live in Maryland.

Sometime in 2009, Husband moved to Tennessee. He moved into the home of a Tennessee woman, and has been living in Tennessee since that time. Wife has continued to live in Maryland.

On September 9, 2010, Husband filed a complaint for divorce in the Chancery Court of Gibson County, Tennessee, alleging inappropriate marital conduct and irreconcilable differences. The complaint alleged: "The acts complained of in this Complaint for Divorce were committed while [Husband] was a bona fide resident of [Tennessee]."

Soon after Husband filed his complaint for divorce, Wife's attorney filed a notice of appearance on Wife's behalf in the trial court. On January 24, 2011, Wife filed an answer and a counterclaim for divorce. In her answer, Wife denied that the acts described in Husband's complaint occurred when Husband was a resident of Tennessee, and she averred that the acts of which Husband complained in his divorce complaint "were committed while [Husband] was a bona fide resident of Maryland." Wife asked the trial court to dismiss Husband's complaint, but she asserted a counterclaim for divorce based on irreconcilable differences, inappropriate marital conduct, and desertion. Wife asserted that Husband had been a resident of Tennessee for more than six months, that she at all times was a resident of Maryland, and that "all grounds for divorce arose while the parties were bona fide residents of Maryland." Wife's answer and counterclaim did not challenge the trial court's exercise of personal jurisdiction over her, but she instead asked the trial court to adjudicate the rights of the parties pertaining to the divorce. Discovery ensued.

On April 18, 2012, the trial court conducted the first day of trial in the matter. Both parties testified about their assets, their debts, and the circumstances of their separation. Wife's testimony was brief. She said that the parties lived in Maryland the entire time they were married until Husband moved out, and that she still lived in the marital residence in Maryland. At the time of trial, she was working 30 hours per week in retail, earning $11.95

---

[1] The record does not reveal the state in which the parties were married, but it was not Tennessee.

per hour. Wife said she had all of the marital debt, and that Husband offered her no financial support after he left.

Husband testified as well. He said that he moved out of the parties' Maryland home in 2007 or 2008 because he was depressed and unhappy in the marriage. He explained that he "was not comfortable at home. I was not happy. I was depressed. I was not supported emotionally by or mentally by [Wife]." Immediately after he moved out of the marital home, Husband said, he worked for a trucking company as an over-the-road truck driver. During that time, he lived by himself in the tractor-trailer truck that he drove for his work. He received his mail at a post office box in Portland, Oregon. At some point, the trucking company for whom Husband was working went bankrupt. After that, in approximately 2009, Husband began working for John R. Reed trucking company. Around that same time, Husband moved to Tennessee into the home of his girlfriend at the time of trial ("Girlfriend"), who also worked for John R. Reed trucking company. During his testimony, Husband was asked, "[Y]ou didn't even have a residence or dwelling until you moved in with [Girlfriend]?" He answered, "That is correct." By the time of trial, Husband had been living with Girlfriend in Tennessee for two and a half years, and was still living there. He commented: "My girlfriend and I have a very nice relationship . . . ." At the close of the testimony, the trial court continued the remainder of the trial until August to give the parties an opportunity to conduct further discovery.

A few days later, however, on April 23, 2012, the trial court entered an order, *sua sponte*, dismissing the case for lack of subject-matter jurisdiction and/or lack of personal jurisdiction. The trial court determined that the undisputed evidence at trial revealed that, at all relevant times, the parties lived in Maryland and all of their assets were in Maryland, with the exception of the personal property Husband took with him when he moved out of the marital home. The trial court noted that Husband "did not testify to any contact that [Wife] had with the State of Tennessee." Given these facts, the trial court held:

> Subject matter jurisdiction relates to the court's power and authority to adjudicate the particular claim. Personal jurisdiction relates to the court's authority over the parties themselves. Issues involving subject matter jurisdiction are purely questions of law. A court in Tennessee cannot exercise personal jurisdiction over a non-resident party unless the non-resident part[y] has sufficient minimum contacts with the State to warrant the exercise of personal jurisdiction. The plaintiff has the burden of demonstrating that the non-resident party has sufficient minimum contacts with Tennessee to warrant the exercise of personal jurisdiction.

> Tennessee Code Annotated [§] 20-2-222 and 223 set[] out nine conditions based upon enduring relationship and conduct when a court can exercise personal jurisdiction. None of these conditions were proven by James Robert Wilken. . . .
>
> The court is persuaded that [Wife's] prayer that Husband's Complaint for Divorce should be dismissed should be granted and costs taxed to [Husband]. Likewise [Wife's] counterclaim and any issues not specifically rule[d] on are dismissed.

(Citations omitted). Thus, based on Wife's insufficient contacts with Tennessee, the trial court concluded that it lacked personal jurisdiction over Wife. The trial court's order discussed subject-matter jurisdiction, but it is unclear whether the trial court concluded that it lacked subject-matter jurisdiction over the lawsuit. At any rate, it dismissed the entire case. From this order, Husband now appeals. Wife did not file an appellate brief, so we address the issues based on Husband's appellate brief and the appellate record.

### ANALYSIS

On appeal, Husband argues that the trial court erred in dismissing this lawsuit based on lack of personal jurisdiction and lack of subject-matter jurisdiction. The trial court's rulings on these issues are conclusions of law, which are reviewed *de novo* on the record, affording the trial court's decision no presumption of correctness. *See Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009) (personal jurisdiction); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000) (subject-matter jurisdiction).

On the issue of personal jurisdiction, Husband argues that Wife consented to personal jurisdiction by filing a general appearance in the trial court, and by filing an answer and a counterclaim in which she raised no issue as to personal jurisdiction. Husband argues that the trial court erred in dismissing the case based on lack of subject-matter jurisdiction because Tennessee Code Annotated § 36-4-104(a) gives the trial court jurisdiction over the case if either party has resided in Tennessee for the six months immediately preceding the filing of the complaint for divorce. That statute provides:

> (a) A divorce may be granted for any of the causes referenced in § 36-4-101 if the acts complained of were committed while the plaintiff was a bona fide resident of this state or if the acts complained of were committed out of this state and the plaintiff resided out of the state at the time, if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint.

Tenn. Code Ann. § 36-4-104(a) (2010).  Husband claims that his undisputed testimony at trial established that he had resided in Tennessee with Girlfriend for at least six months before he filed his complaint for divorce, and Wife acknowledged this fact in her counterclaim.  Because the six-month residency requirement in Section 36-4-104(a) has been met, Husband argues, the trial court erred in dismissing the lawsuit based on lack of subject-matter jurisdiction.

As the trial court correctly observed, in order to adjudicate a claim, a court must possess both personal jurisdiction and subject-matter jurisdiction. *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994).  As the trial court also observed, the concepts of personal jurisdiction and subject-matter jurisdiction are distinct.  Personal jurisdiction refers to the court's authority to adjudicate the claim as to the person.  *Id.*  "Personal jurisdiction of non-resident defendants may be obtained by service of process under the Tennessee Long Arm Statute . . . if, and only if, the non-resident defendant has such minimum contacts with this state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *J.I. Case Corp. v. Williams*, 832 S.W.2d 530, 531 (Tenn. 1992)).  Objections to personal jurisdiction must be raised as a defense in the defendant's first filing, either in the answer or in a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Procedure.  If the defendant fails to do so and participates in the litigation prior to raising this defense, the objection to personal jurisdiction is waived.  *Id.*

Subject-matter jurisdiction, on the other hand, relates to the nature of the cause of action and the relief sought.  *Id.*  Subject-matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy.  *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004).  A court derives its subject-matter jurisdiction, either explicitly or by necessary implication, from the Tennessee Constitution or from legislative acts.  *See, e.g., Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn.1996).  The parties cannot confer subject-matter jurisdiction on a trial court, or on an appellate court, by appearance, plea, consent, silence, or waiver.  *State ex rel. Dep't. of Soc. Servs. v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987).

For this reason, the issue of subject-matter jurisdiction may be raised at any time during the proceedings, by the parties or by the court.  *McQuade v. McQuade*, No. M2010-00069-COA-R3-CV, 2010 WL 4940386, at *4 (Tenn. Ct. App. Nov. 30, 2010).  A court may raise the issue of subject-matter jurisdiction *sua sponte*, even where no party objects.  *See Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998); *McQuade*, 2010 WL 4940386, at *4; *In re Estate of Boykin*, 295 S.W.3d 632, 635 (Tenn. Ct. App. 2008); *see* Tenn. R. App. P. 13(b).

From our review of the record in this case, Wife did not object to the trial court's exercise of personal jurisdiction in her initial filings with the trial court. To the contrary, she indicated her consent to the trial court's exertion of personal jurisdiction when her attorney filed a general appearance on her behalf and when she filed an answer and counterclaim that did not object to the trial court's exercise of jurisdiction over her. In her counterclaim, Wife specifically asked the trial court to adjudicate all of the rights between the parties. Because Wife clearly waived any objection and consented to personal jurisdiction, we reverse the trial court's holding that it did not have personal jurisdiction over Wife.

The trial court's order discussed subject-matter jurisdiction, but it is not entirely clear whether the dismissal of the parties' divorce was also based on lack of subject-matter jurisdiction, or whether it was based only on lack of *in personam* jurisdiction. Regardless, because the trial court must have subject-matter jurisdiction in order to adjudicate the parties' divorce, we will address the issue.

As we have indicated, "[s]ubject matter jurisdiction differs fundamentally from personal jurisdiction in that the latter can be conferred by express or implied consent," while subject-matter jurisdiction cannot be conferred "by appearance, plea, consent, silence, or waiver." *Landers*, 872 S.W.2d at 675. So, for subject-matter jurisdiction, waiver is not an issue. We look only at whether there is a legislative or constitutional basis for the trial court's exercise of jurisdiction over the parties' divorce.

Husband argues that the trial court had subject-matter jurisdiction over this divorce case based on Section 36-4-104(a). Once the six-month statutory residency requirement is met, he contends, the Tennessee court has subject-matter jurisdiction to hear the divorce. *See Conley v. Conley*, 181 S.W.3d 692, 695-96 (Tenn. Ct. App. 2005); *Kljajic v. Kljajic*, No. M2002-01294-COA-CV, 2003 WL 21954189, at *1 (Tenn. Ct. App. Aug. 15, 2003); *Sanders v. Sanders*, No. M2001-02694-COA-R3-CV, 2003 WL 21004628, at *1 (Tenn. Ct. App. May 6, 2003).

The substantive law governing divorce in Tennessee is entirely statutory, so "a trial court's subject matter jurisdiction over a particular divorce action must be based upon the applicable divorce statutes." *Barnett v. Barnett*, No. 01A01-9605-CH-00228, 1998 WL 787043, at *3 (Tenn. Ct. App. Nov. 13, 1998). In this case, "the issue of whether the [trial] court had jurisdiction to hear and grant a divorce is governed by Tenn. Code Ann. § 36-4-104," quoted above. *Conley*, 181 S.W.3d at 695.

The first portion of the statute authorizes the trial court to exercise jurisdiction over the case "if the acts complained of were committed while the plaintiff was a bona fide resident of [Tennessee]." Tenn. Code Ann. § 36-4-104(a). In his divorce complaint, Husband asserted

that the acts about which he complained were committed while he was a resident of Tennessee. The evidence in the record, however, does not bear out this assertion. Husband testified that he was "unhappy" with Wife when he moved out of the marital home in Maryland; he did not describe any specific acts that contributed to his decision to file for divorce, particularly none that occurred after he moved to Tennessee. Husband testified specifically that he did not leave Wife based on an affair with Girlfriend. Thus, the record contains no evidence indicating that any acts about which Husband complained occurred in Tennessee. Consequently, based on the record before us at this juncture in the proceedings, we conclude that this prong of Section 36-4-104(a) is not a basis for finding subject-matter jurisdiction.

The second portion of the statute provides that, if the acts complained of in the divorce petition were committed outside of Tennessee during a time when the plaintiff was not a resident of Tennessee, the trial court still has jurisdiction over the matter "if the plaintiff or the defendant has resided in this state six (6) months next preceding the filing of the complaint." Tenn. Code Ann. § 36-4-104(a). The six-month residency requirement was "intended to assure that Tennessee has a sufficient relationship with the parties and their marriage to make it reasonable for the courts of this state to affect the parties' marital status." *Conley*, 181 S.W.3d at 696 (quoting *Barnett*, 1998 WL 787043, at *3).

The term "residence" as used in Section 36-4-104(a) has been interpreted to mean "domicile." *Id.*; *see Wiseman v. Wiseman*, 393 S.W.2d 892, 895-96 (Tenn. 1965). A person's domicile is "the place where a person has his principal home and place of enjoyment of his fortunes; which he does not expect to leave, except for a purpose; from which when absent, he seems to himself a wayfarer; to which when he returns, he ceases to travel." *Wiseman*, 393 S.W.2d at 894 (internal quotations omitted), *quoted in Conley*, 181 S.W.3d at 696. To create a domicile in Tennessee, a person must intend to establish a personal home in Tennessee and must act consistently with this intention. *Barnett*, 1998 WL 787043, at *3. "To acquire domicile here, the person must also have no present intention or expectation of changing his or her residence to some other state." *Id.* To determine whether Tennessee was Husband's domicile for the six months immediately preceding the filing of his divorce complaint, we consider "not only [his] declarations and conduct but also all other relevant facts and circumstances." *Id.* at *4.

Although the issue of subject-matter jurisdiction is a question of law, the question of Husband's domicile is a fact issue that must be established by a preponderance of the evidence. *Id.* Where domicile is contested, "the person claiming domicile in a particular state must establish his or her claim by a preponderance of the evidence." Ordinarily, the issue of domicile is a factual finding by the trial court, reviewed on appeal under a Rule 13(d) standard, presuming the trial court's finding to be correct unless the evidence preponderates

otherwise. In this case, the trial court made no express findings regarding Husband's domicile. Therefore, we must conduct an independent review of the record to determine where the preponderance of the evidence lies. *See Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002).

The only evidence submitted at trial on this issue was Husband's testimony. He stated that, at the time of trial in April 2012, he had been living in Tennessee with Girlfriend for two and a half years. From this undisputed testimony, it appears that Husband moved to Tennessee in approximately October 2009. Husband filed his complaint for divorce on September 9, 2010, at a time when it appears he had been living in Tennessee for almost one year.

As noted above, the evidence on "domicile" must also demonstrate an intent to make Tennessee Husband's home. *Wiseman*, 393 S.W.2d at 894. Again, the only evidence in the record on this issue is Husband's testimony at trial. At the time of trial, Husband was still employed at John R. Reed trucking company, Girlfriend continued to work at the same company, and he had a long-term relationship with Girlfriend that was going well. This indicates an intention to stay with Girlfriend in Tennessee for the foreseeable future, and there is nothing in the record to the contrary. Thus, the evidence in the record at this juncture preponderates in favor of a finding that Husband is domiciled in Tennessee for purposes of determining subject-matter jurisdiction pursuant to Section 36-4-104(a).

Therefore based on the record before us, we must conclude that the trial court has subject-matter jurisdiction over the parties' divorce proceedings. Finding both *in personam* jurisdiction and subject-matter jurisdiction, we must reverse the trial court's dismissal of the case.

### CONCLUSION

The decision of the trial court is reversed and the cause is remanded for further proceedings. Costs on appeal are to be taxed to Defendant/Appellee Mary Charlotte Wilken, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE